RALPH H. GRISSOM, JR.

*v.*

H. K. FERGUSON COMPANY.

(*Knoxville,* September Term, 1958.)

Opinion filed September 3, 1959.

Rehearing denied October 2, 1959.

FOWLER, ROWNTREE & FOWLER, WILBUR W. PIPER, Knoxville, for appellant (defendant).

ALLEN M. ELLIOTT, Knoxville, for appellee (complainant).

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is a workmen's compensation case coming to this Court on appeal from the Chancery Court of Knox County. The Chancellor entered a decree awarding compensation to the injured employee based upon a 50 per cent permanent partial disability to the body as a whole. The total amount of this award was $1,410. It is from this decree that the Chancellor granted an appeal.

The appellee, Ralph H. Grissom, Jr., was employed as a pipe-fitter by the appellant, H. K. Ferguson Company, and suffered an injury to his back and arm while so employed. The only issue on this appeal relates to the extent of Grissom's disability.

The technical record and bill of exceptions were filed on February 16, 1959. The assignments of error with supporting brief were not filed until April 29, 1959. On the same date the counsel for the appellee, Grissom, files his motion to strike the assignments of error because the same does not comply with the rules of this Court. We think the motion is well taken and is sustained. However, the Court has given full consideration to the brief of counsel upon all factual issues.

As we view the determinative issue it involves no technical rule of law. It is purely a question of fact as to the extent of Grissom's disability, i. e. whether or not there is any material evidence to support the Chancellor's decree.

The record discloses that the accident and injury arose out of and in the course of the appellee's employment. There is little if any dispute as to the facts. The petitioner Grissom, worked for the defendant in October, 1956, at which time he suffered this injury to his back. He was confined to a hospital for a month; he still wears a brace occasionally.

Regarding the nature of his injury he testified, as follows:

"Q. What kind of suffering and what was your disability that you know yourself about while at St. Mary's? A. Well, I have got an arm that when I raise it up it felt like somebody kicking me in the back.

"Q. Which arm is that? A. My left arm.

"Q. Did you tell Dr. Carlson about that arm? A. Yes, sir, and it feels numb and just tingles like it is asleep all the time.

"Q. What about your back? A. That is what I am talking about, unless I use my arm, the back gives me some trouble, but don't give me near as much trouble as when I raise my arm.

\* \* \* \* \* \*

"Q. Is there any heavy lifting in the pipe fitting trade? A. Yes, sir, all of it is heavy lifting.

"Q. Can you do any lifting? A. No, sir.

"Q. Why? A. On account of my back.

"Q. What happens to your back, is it sore or stiff? A. Sore.

"Q. Is it better now or worse than it was when you were discharged from the hospital? A. I can't see no change in it."

Petitioner testified he had worked some since the accident for T.V.A., but only light work, because he could not do the work required of a pipe-fitter. He had a physical examination by T.V.A. similar to one given before going into the Army. A girl filled out the questionnaire, she put down the answer "he had no broken bones". The witness was cross-examined at length about statements he made, or did not make, to a Dr. Capps at New Johnsonville.

We next consider the testimony of Dr. C. Sanford Carlson, a capable orthopedic surgeon, regarding the injury complained of. He gave the following testimony:

"Q. I believe Mr. Grissom's family called you in to look after him at St. Mary's Hospital when he was injured? A. Yes, sir.

"Q. What injuries did he have? A. I found he had a compression fracture of the first lumbar vertebra.

"Q. Is that in the lower part of the back? A. That's in the mid lower part of the back.

\* \* \* \* \* \*

"Q. What did you do about the treatment substantially and how long did he stay in the hospital? A. We administered conservative or non-operative treatment, we initially placed him in a body cast and then that was replaced with a back brace; he was discharged from the hospital on November 21, 1956.

"Q. I believe he was injured on October 26, 1956? A. Yes, sir.

"Q. When he was discharged, was he wearing a back brace? A. Yes, sir.

"Q. Was anything necessary for him to do except to go about and let nature take its course and heal the bone? A. No, sir."

He later examined the petitioner's arm but found only subjective symptoms. Shortly before the trial Dr. Carlson examined the petitioner and testified at length as to the extent of disability. His final conclusion was "that he has a residual permanent partial disability of between 10% and 15% to the body as a whole." On cross-examination he testified that in his opinion the petitioner was not "malingering", but that he had been cooperative and had been "honest in his reporting his symptoms."

We have heretofore stated the conclusion of the Chancellor as to the extent of petitioner's disability. We

think the foregoing testimony amounts to some material evidence to support his decree.

We have considered other evidence in the record. But do not decide any factual issue based upon the weight or preponderance of the evidence.

The Chancellor's decree is affirmed. The cause is remanded for such orders as may be necessary to enforce the decree.

### On Petition to Rehear

On July 29, 1959, we released an opinion in this case in which the decree of the Chancellor was affirmed. We sustained the motion of the defendant in error, Ralph H. Grissom, Jr., to strike the appellant's assignments of error on the ground that the same were filed too late. We, however, considered all the evidence in the cause, and the brief of appellant's counsel reviewing the facts, to determine the merits of the complainant's claim of compensation.

Comes now the appellant and prays for a rehearing, complaining that the Court erred in not passing upon the assignments of error. In the petition to rehear it is averred "that this action of the Court was erroneous, in that after the Motion of Appellee was filed that the Appellant filed the record for writ of error, and executed and filed with the Clerk a bond in the sum of $3,000.00, and re-filed the assignments of error with Brief." Contention is now made "that this action permitted the Appellant to have its assignments of error fully considered by the Court, and that the failure to file the assignments of error with brief within the time required by Rule 14 of this Court was cured by filing the record for

writ of error and refiling the assignments of error and executing a bond under writ of error."

Counsel makes reference to T.C.A. sec. 16-323, which provides for special terms upon publication of notice. That section, however, is wholly irrelevant to this situation.

T.C.A. sec. 16-203 provides:

*"Times of Supreme Court sessions.* — The court shall hold one session each year as follows: At Knoxville on the second Monday in September, at Nashville on the first Monday in December, and at Jackson on the first Monday in April of each year."

■■ That section for many, many years has been construed to express the minimum requirement, i. e., the Court must hold at least one session each year as specified; in practice also, the Court has construed said section to mean that it may stand in recess from one sitting to another, even though one or more sessions in another Grand Division should intervene between two sessions in the same Grand Division. For example, between the spring and fall sessions in Knoxville the Court has several sessions at Nashville. If counsel will examine the Clerk's docket at Knoxville for the April session of 1959, it will be found that the docket is headed September Term 1958, April Session 1959.

T.C.A. sec. 16-312 provides:

*"Appeals taken before term.*—All appeals, and appeals in the nature of a writ of error, taken from the final judgment or decree of an inferior court, at any time before the sitting of the Supreme Court, shall

stand for hearing at the first term, without notice to the opposite party."

T.C.A. sec. 16-313 provides:

"*Appeal during term.*—An appeal, appeal in the nature of a writ of error, or writ of error may be prosecuted from any final judgment or decree, rendered in an inferior court during the term of the Supreme Court, the record being filed in the court, and the opposite party, or his counsel, notified five (5) days before the hearing."

■ These two sections have been construed to mean that appeals should generally be taken to the next term succeeding the time at which an appeal is granted, and they shall stand for hearing at that succeeding term; but that an appellant has the option to appeal to the present or current term of the Court and may have a hearing at that term upon giving his adversary five days' notice of such desire. *Savely v. Phillips,* 25 Tenn.App. 654, 166 S.W.2d 780; Gilreath's History of a Lawsuit, Sec. 453.

■ It is clear, however, that if, after the record is filed, and the Clerk sets the case for hearing at the current term, and counsel fails to object to the hearing at that time, after proper notice is given by the Clerk, counsel should be, and will be, considered as having waived the right to object to the setting at the current term, and will be required to comply with the lawful rules of Court enacted for the purpose of expediting the business of the Court.

In this case, the record was filed in the Supreme Court on February 16, 1959, and notice given to counsel of record. The case was set for hearing on May 1, 1959, but

no assignments of error were filed until April 29, 1959, which was only three days before the case was heard. As a result of adversary counsel's motion to dismiss for failure of appellant to file assignments of error and brief in accordance with Rule 14 of this Court, appellant on May 1, 1959, filed the record for a writ of error and executed and filed with the Clerk a bond in the sum of $3,000 and re-filed the assignments of error with a brief, as stated supra.

T.C.A. sec. 16-311 provides:

"*Rules of practice.*—The Supreme Court may make rules of practice for the better disposal of business before it."

Rule 15, subsec. (2) provides:

"*Case affirmed when assignments of error not filed.* —When appellants, or plaintiffs in error, in civil cases, fail or refuse to file an assignment of errors and brief, as required by this rule, it will be taken as an abandonment of the appeal or writ or error, and the decree or judgment will be affirmed. Errors not assigned and supported by brief according to this rule, will be treated as waived, but the court, in its discretion, may notice an error overlooked by counsel."

■ Rules 14 and 15 are reasonable rules for the purpose of expediting the business of the Court and must be complied with where counsel permits a case to be set by the Clerk without objection, even though he might have had the hearing set over to the next succeeding term, if timely objection had been made.

These two rules have been discussed and interpreted in *State ex rel. Pennington v. Bailey,* 196 Tenn. 285, 265 S.W.2d 882.

■ For the foregoing reasons, we decline the request to set the case down for argument at the September Term at Knoxville. The petition to rehear, based upon issues of fact, is denied because the Court gave full consideration to all the testimony in deciding the question of appellant's liability, as fully appears in the original opinion.